NATIONAL VAN LINES, INC., an Illinois Corporation, Plaintiff,

v.

ATLAS VAN LINES, INC., a Delaware Corporation, et al., Defendants.

No. 74 C 3735.

United States District Court, N. D. Illinois, E. D.

Nov. 3, 1975.

Moriarty, Rose & Hultquist, Ltd., Chicago, Ill., for plaintiff.

I. Hunce Naiman, Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., Herbert Burstein, New York City, for defendants.

### MEMORANDUM DECISION

MARSHALL, District Judge.

By a discursive amended complaint, plaintiff, National Van Lines, Inc., professes to complain of a conspiracy among defendants to restrain trade and commerce in violation of Sections 1 and 2 of the Sherman Act. Plaintiff asserts that the action is brought under Sections 4 and 16 of the Clayton Act to recover treble damages, attorneys' fees and costs, and injunctive relief. 15 U.S.C. §§ 15 and 26, and 28 U.S.C. § 1337. Although the amended complaint was drawn by counsel, it is entitled to the liberal construction under Rule 8 of the Federal Rules of Civil Procedure mandated by the Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dioguardi v. Durning*, 139 F.2d 774 (2d Cir. 1944). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. at 102. Liberally construed, the amended complaint alleges the following.

Plaintiff is a motor carrier operating through authorized agents in the transportation of household goods in interstate commerce domestically and foreign commerce. In 1948, 33 of plaintiff's agents formed defendant Atlas Van Lines, Inc. (hereinafter Atlas). In 1956, Atlas Van Lines International Corp. (hereinafter Atlas International) was organized as a wholly owned subsidiary of

Atlas. In 1970, defendant International Transport Agency (hereinafter ITA) was chartered in Italy by defendant Frank Luppi (hereinafter Luppi) who is a director, employee and agent of ITA and an employee of Atlas and Atlas International. The capital for ITA was provided by Atlas International and defendant Gondran Corporation, an Italian corporation located in Milan, Italy.

Defendant Herbert Burstein (hereinafter Burstein) is a lawyer licensed to practice in New York. He has acted as counsel for plaintiff and has served as its statutory agent in New York. He also serves as counsel to Atlas, Atlas International, ITA and Luppi. Burstein is "often called upon and often does visit this district to conduct business in furtherance of his duties in the aforementioned capacities."

Defendant O. H. Frisbie (hereinafter Frisbie) is a director of ITA as well as president and chairman of the board of Atlas. Defendant Wunk Banchelli (hereinafter Banchelli) is a citizen of Italy and a director of ITA and a director and vice president of Gondran. Defendant Robert Miller (hereinafter Miller) is executive vice president of Atlas. Defendant R. K. Lowry (hereinafter Lowry) is a former employee of plaintiff.

Without plaintiff's knowledge or consent, Burstein, plaintiff's counsel, advised and assisted the 33 agents of plaintiff to organize and form Atlas in 1948. Since its incorporation, Atlas has actively sought and acquired many of plaintiff's agents by the offer of cash payments which have not been uniformly paid to other agents acquired by Atlas.

Upon its organization in 1970, ITA became an agent of Atlas International for the purpose of providing local carriers for Atlas International's business in all of Europe, the Middle East and North Africa. At the time of certain negotiations between Luppi and plaintiff in 1974, plaintiff was unaware of the relationship between ITA and Luppi on the one hand and Atlas International on the other.

In February, 1974, Burstein and Luppi met, and agreed that ITA would try to become plaintiff's European agent in order that it could divert plaintiff's business to Atlas International. Luppi came to Broadview, Illinois to negotiate a contract with plaintiff. He enlisted Lowry in a "conspiracy." An agreement was negotiated between ITA, acting through Luppi, and plaintiff, all of the terms of which were agreed upon. Luppi was to return to Italy and provide plaintiff with ITA's schedule of rates to be charged plaintiff. It was to be attached to the agreement, executed by plaintiff and submitted to Luppi for execution.

Lowry induced plaintiff's president to sign the agreement without the rate schedule attached. Lowry then, without plaintiff's authority, went to Rome, delivered the executed agreement to Luppi who attached a rate schedule calling for rates far in excess of those agreed upon between Luppi and plaintiff's president, and Luppi then executed the agreement in behalf of ITA.

Lowry returned to Illinois with the executed agreement. It was rejected by plaintiff's president. Shortly thereafter, Burstein, purportedly acting in behalf of ITA, communicated with plaintiff's president demanding first, $150,000 and then $250,000 in settlement of ITA's rights under the spurious agreement. Those demands were rejected. Thereupon, Burstein instituted an action against plaintiff in the state courts of New York for $238,000. That action was dismissed. Between the filing of the original and amended complaints here, Burstein instituted another action against plaintiff in this district for $487,000. In addition, Burstein has sued plaintiff for $5,000,000 as a result of statements made by plaintiff in its original complaint here. At the present time, neither the breach of contract action nor Burstein's defamation action are pending before me.

Prior to February, 1974, ITA had acted as plaintiff's agent in Greece, Turkey and Iran. During that time, ITA was purchasing special containers for the

packaging of household goods to be shipped over land and sea without uncrating. These boxes were purchased by Luppi in Italy and billed to plaintiff. The boxes were used for the shipment of goods belonging to plaintiff's customers. When delivery was completed, the boxes should have been returned to plaintiff as a part of its inventory. However, while Luppi charged plaintiff with the cost of the containers, he had them stencilled and labelled as the property of Atlas and upon completion of delivery, the boxes were turned over to Atlas.

Upon the filing of the original complaint and service of process thereon, defendants Atlas and Atlas International moved to dismiss for failure to state a claim; defendants Burstein, ITA and Luppi moved to dismiss for want of effective service of process; Lowry did not respond. Defendants Gondran, Frisbie, Banchelli and Miller were not named as parties in the original complaint. Upon consideration of the several motions to dismiss, the court, on its own motion, struck the complaint as incomprehensible and ordered plaintiff to file an amended complaint with the previously filed motions of the several defendants to stand as motions to dismiss the amended complaint. The amended complaint has now been filed. It is slightly better than the first one.

Burstein, ITA and Luppi have been served under those provisions of Rule 4(a) of the Federal Rules of Civil Procedure which adopt in this district the provisions of Sections 16 and 17 of the Illinois Civil Practice Act, *Ill.Rev.Stat.* ch. 110, §§ 16 and 17 (1973). Presumably, plaintiff asserts that these three defendants have either transacted business in Illinois or committed a tortious act in Illinois out of which plaintiff's claims arise, subjecting these defendants to so-called long arm service of process in this district. While these defendants have in no way responded to the merits of plaintiff's claim, their motion to dismiss necessarily involves an examination of the substance of plaintiff's complaint. And, of course, this is likewise true of the motion of Atlas and Atlas International which goes to the merits.

We are at a loss to see how the allegations which plaintiff makes give rise to a claim under Sections 1 and 2 of the Sherman Act and Sections 4 and 16 of the Clayton Act. Assuming that plaintiff and Atlas and Atlas International are in competition with one another for the transportation of household goods in Europe, and assuming further that defendants collectively have committed some wrong against plaintiff, the existence of the wrong plus competition does not give rise to an agreement among the defendants to restrain trade or drive plaintiff from the market place. Giving plaintiff's complaint every reasonable intendment to which it is entitled, it does not state any claim under Sections 1 and 2 of the Sherman Act and Sections 4 and 16 of the Clayton Act. That does not mean, however, that plaintiff's complaint states utterly no actionable wrong or that plaintiff could not, under the test of *Conley v. Gibson, supra,* prove any facts entitling it to relief. Certainly the allegations in respect to the alleged conduct of Luppi attaching to the agreement between ITA and plaintiff a rate schedule other than that agreed upon, would, if proved, entitle plaintiff to rescind the contract. And the allegation that Burstein conspired with Luppi to that end, would, if proved, render Luppi Burstein's agent. Because Luppi came to Illinois for the alleged wrongful purpose, he, his corporate principal, ITA, and his alleged co-conspirator Burstein, would be amenable to process under the vicarious amenability provisions of Section 17 of the Illinois Practice Act.

Furthermore, because it is said that Atlas and Atlas International were a part of the same scheme, they would be held accountable should plaintiff prove its claim. They do not complain of service of process because they are present in this district.

Insofar as the alleged conversion of shipping container inventory is concerned, that appears to have occurred in

**1090**

Europe. Luppi and ITA had no Illinois contacts in respect thereto for it is not said that that wrong grew out of Luppi's visit here. The Illinois Civil Practice Act prohibits joinder of claims against a defendant over whom long arm jurisdiction is exercised which do not have the contacts with Illinois required by Section 17. *Ill.Rev.Stat.* ch. 110, § 17 (1973). Thus, service of process on those claims against Luppi and ITA cannot be sustained.

But the complaint avers that Atlas and Atlas International who are amenable to suit here, were the beneficiaries of Luppi's wrongdoing. They can be held to answer here in respect to the allegations of conversion.

The roles, potential liability and amenabilities to service of defendants Gondran, Frisbie, Banchelli and Miller are not presently before the court for they have not as yet responded to plaintiff's amended complaint.

For the foregoing reasons, the motion of defendants Burstein, ITA and Luppi to quash service of process and dismiss the action as to them will be denied and they will be ordered to answer plaintiff's complaint. The motion of defendants Atlas Van Lines, Inc., and Atlas Van Lines International Corp., to dismiss Count 1 of plaintiff's complaint, which purports to allege violations of Sections 1 and 2 of the Sherman Act and 4 and 16 of the Clayton Act is granted and Count 1 is dismissed; in all other respects their motion to dismiss is denied.

It appears on the face of the complaint that diversity of citizenship exists between plaintiff on the one hand and defendants Atlas, Atlas International, ITA, Burstein and Luppi on the other. The action will proceed as a diversity action in respect to the alleged fraudulent contract and the alleged conversion of shipping containers and defendants Burstein, ITA, Luppi, Atlas and Atlas International are ordered to answer in accord with the views expressed herein.