Alice TEXTOR, et al., Plaintiffs-Appellants Cross-Appellees,

v.

BOARD OF REGENTS OF NORTHERN ILLINOIS UNIVERSITY, Eastern Michigan University, University of Toledo, University of Miami of Ohio, Ohio University, Kent State University, Ball State University, Bowling Green State University, Mid-America Conference and Fred Jacoby, as Commissioner of Mid-America Conference, Defendants-Appellees,

and

Central Michigan University and Western Michigan University, Defendants-Appellees Cross-Appellants.

Nos. 82–1758, 82–2345, 82–2346, 82–2377 and 82–2378.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1983.

Decided July 6, 1983.

See also, D.C., 87 F.R.D. 751.

Office of the Mayor, that allows a grace period for employees losing an exemption.

B. John Mix, Jr., Chicago, Ill., Edward Diedrich, John T. Mead, Dekalb, Ill., for defendants-appellants.

Michael A. Warner, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiffs-appellees.

J. David Kerr, Central Michigan Univ., Mount Pleasant, Mich., for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and GRAY, Senior District Judge.*

PELL, Circuit Judge.

Plaintiff-appellant Alice Textor appeals the district court's denial of her motion for leave to file an amended complaint while her attorneys appeal the court's award of attorney's fees based on its finding that they were guilty of willful abuse of the judicial process. Two defendants have cross-appealed the court's denial of attorney's fees for their salaried counsel. Our discussion of these issues will be facilitated by treating them separately; we will therefore defer at this point the review of those facts relevant only to the award of attorney's fees.

## I. Leave to Amend the Complaint.

### A. Facts.

Plaintiff was employed by defendant Northern Illinois University (NIU) as women's athletic director and coach of women's basketball and tennis. In January of 1980 attorney Deidrich filed this class-action suit on behalf of plaintiff and other similarly situated women against the Mid-America Conference (MAC), member colleges of MAC, and MAC Commissioner Fred Jacoby. The complaint alleged constitutional and statutory violations stemming from defendants' disparate treatment of men's and women's athletics. Defendants filed motions to dismiss and supporting memoranda that urged dismissal based on Deidrich's failure to sign the complaint as required by Rule 11 of the Federal Rules of Civil Procedure, lack of personal jurisdiction over the out-of-state defendants, improper venue, and plaintiff's lack of standing to sue defendants other than NIU. Defendant Central Michigan University filed an answer incorporating these arguments. Plaintiff filed a short response that did not address defendants' arguments concerning jurisdiction or venue.

On October 2, 1980, in a published opinion, Judge Shadur ruled upon defendants' motions. *Textor v. Board of Regents,* 87 F.R.D. 751 (N.D.Ill.1980). Judge Shadur found that the complaint lacked any colorable basis for an assertion of personal jurisdiction over the out-of-state defendants. According to Judge Shadur, the complaint set forth only the most tangential contacts between MAC, its non-Illinois members, Jacoby, and the State of Illinois. These contacts, which consisted of occasional athletic contests in Illinois and MAC members recruiting students and faculty in Illinois, had no relationship with plaintiff's claimed injuries. The out-of-state defendants, there-

---

* William P. Gray, Senior District Judge for the Central District of California, is sitting by designation.

fore, could not be reached through Illinois' long-arm service of process statute. Ill. Rev.Stat. ch. 110, § 17(3). Judge Shadur also found the allegations insufficient to establish venue in the Northern District of Illinois. Although he indicated that defendants' remaining arguments were probably meritorious, Judge Shadur did not address these claims as the lack of jurisdiction and venue were adequate grounds for dismissal. Plaintiff's claims against NIU, the only defendant not dismissed, were transferred to Judge Flaum to be resolved with a related case.

On October 10, 1980, plaintiff filed a motion to vacate the dismissal of the out-of-state defendants and requested leave to amend the complaint, but did not present a proposed amendment. The court denied the motion to vacate and did not rule on the request for leave to amend as there was no amendment to consider. On November 12, 1980, plaintiff filed a second motion for leave to amend accompanied by a proposed amendment. On February 2, 1982, Judge Kocoras, to whom the case had been reassigned, denied plaintiff leave to amend because the amendment failed to cure the deficiencies that resulted in dismissal of the original complaint. Plaintiff filed a motion for reconsideration of that order on February 17, which initially was denied on February 18. On February 23, however, Judge Kocoras struck the order of February 18 and allowed plaintiff until March 2 to file memoranda in support of her "Rule 59(e)" motion. On April 6 plaintiff was again denied leave to amend. On April 12 Judge Kocoras reissued the order denying leave to amend, but correcting a minor error in the order of February 2. Plaintiff filed a notice of appeal on May 6.

*B. Jurisdiction on Appeal.*

At the outset we must consider the contention that we lack jurisdiction over plaintiff's appeal because her notice of appeal was untimely.

The order denying plaintiff leave to amend entered on February 2 was a final, appealable order. Rule 4(a), Fed.R. App.P., requires that notice of appeal be filed within thirty days of entry of a final

order. A court of appeals may not enlarge this time period, Fed.R.App.P. 26, but a timely motion to alter or amend the judgment filed with the district court under Rule 59(e), Fed.R.Civ.P., will toll the running of the thirty days. Fed.R.App.P. 4(a)(4). Plaintiff's motion to reconsider the denial of leave to amend, which the court properly viewed as a Rule 59(e) motion, would have tolled the thirty day period had it been timely. Plaintiff's motion, however, was not filed within ten days as required by Rule 59. Plaintiff's motion, then, did not toll the thirty days and should have been dismissed as untimely by the district court.

Plaintiff's failure to file a notice of appeal within thirty days of the district court's denial of her motion for leave to amend normally would prevent us from hearing her appeal. There is a narrow exception to this rule that permits us to entertain plaintiff's appeal notwithstanding her untimely notice. In *Thompson v. Immigration and Naturalization Service,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), appellant filed an untimely Rule 59 motion. The INS did not object to the motion as untimely and the district court assured appellant that the motion was filed in time. Appellant, relying on the district court's assurances, did not file a timely notice of appeal in the mistaken belief that the filing period had been tolled. The Supreme Court held that in this situation the appeal should be treated as timely.

This court recently relied upon *Thompson* in relieving an appellant of the consequences of an untimely notice of appeal when he "relied to his detriment on the assurances of the district court that an untimely post-trial motion tolled the thirty-day notice of appeal time." *Needham v. White Laboratories, Inc.,* 639 F.2d 394, 398 (7th Cir.1981), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237; *see also Motteler v. J.A. Jones Construction Co.,* 447 F.2d 954 (7th Cir.1971).

This case presents both elements of the *Thompson* exception: a post-trial motion that would have tolled the time for filing a notice of appeal had it been timely, and

action by the district court that plaintiff apparently relied upon in not filing a timely notice of appeal. Plaintiff filed her Rule 59 motion 17 days after entry of judgment. The district court denied the motion on February 18, but did not do so on the basis of untimeliness. On February 23, while plaintiff could still file a timely notice of appeal, the district court struck the order of February 18 and granted plaintiff time to file memoranda in support of her "Rule 59 motion." Plaintiff, understandably, relied upon this in preparing memoranda in support of her motion rather than filing a notice of appeal. The district court erred in considering the motion, but this error should not deprive plaintiff of her right to appeal. Accordingly, we believe that the facts of this case are within the *Thompson* exception and we have jurisdiction over plaintiff's appeal.

Because we have jurisdiction over plaintiff's appeal from the order of February 2, 1980, we need not address defendant's argument that the district court was without jurisdiction to enter the subsequent orders during the following April.

### C. Sufficiency of the Proposed Amendment.

▉ Contrary to defendants' assertion, the district court was empowered to grant plaintiff's motion for leave to amend even after judgment had been entered. *United States Labor Party v. Oremus,* 619 F.2d 683, 692 (7th Cir.1980). The district court's decision not to allow amendment of the complaint at this stage of the litigation is reviewable only for an abuse of discretion. *Id.; Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir.1979). In review-

ing the district court's decision, however, it must be remembered that "the hallmark of sound judicial discretion is the lawfulness of the action taken." *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 661 (7th Cir.1978), *cert. denied,* 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979).

▉ Leave to amend "shall be freely given when justice so requires." Fed.R. Civ.P. 15(a).[1] A district court may refuse to allow amendment of a complaint when the proposed amendment fails to cure the deficiencies of the original complaint. *Verhein v. South Bend Lathe, Inc., supra; Cohen ·v. Illinois Institute of Technology, supra.* Leave to amend may also be denied when the amending party is guilty of bad faith in delaying presentation of the amendment. *United States Labor Party v. Oremus, supra;* 6 C. Wright & A. Miller, Federal Practice and Procedure § 1488 (1971). Delay in presenting the amendment will be a sufficient basis for denial of leave to amend only when the delay has caused the opposing party undue prejudice. *Id.* As the district court did not rely upon delay in denying plaintiff leave to amend, and as we do not think that plaintiff's decision to wait until the court ruled upon the original complaint before offering the amendment caused defendants undue prejudice, we will focus our attention upon the district court's determination that the amendment did not remedy the jurisdictional defects in the original complaint.

Judge Shadur dismissed the original complaint after finding that it failed to allege facts that would support an assertion of personal jurisdiction over the out-of-state

---

1. Plaintiff claims to be entitled to amend her complaint as a matter of right under Rule 15, which provides inter alia that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served." Plaintiff correctly observes that defendants' motions to dismiss are not "responsive pleadings." *Northlake Community Hospital v. United States,* 654 F.2d 1234, 1240 (7th Cir.1981); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1483 (1971). In making this argument, however, plaintiff ignores defendant Central Michigan University's answer, which clearly is a responsive pleading.

Furthermore, once a motion to dismiss has been granted the district court need not allow an amendment that does not cure the defects that led to dismissal of the original complaint. "Rule 15(a) does not require a court to do a futile thing." *Sarfaty v. Nowak,* 369 F.2d 256, 259 (7th Cir.1966), *cert. denied,* 387 U.S. 909, 87 S.Ct. 1691, 18 L.Ed.2d 627 (1967). In this situation the "absolute" right to amend is no greater than the right to request leave to amend, which should not be denied if the amendment is sufficient and filed without undue delay.

defendants. *Textor v. Board of Regents,* 87 F.R.D. 751 (N.D.Ill.1980). Judge Shadur held that plaintiff had not alleged sufficient contacts between defendants and the State of Illinois. Although due process does not require minimum contacts with a federal judicial district before subjecting a defendant to jurisdiction when the suit involves a federal question, the absence of a federal long-arm service of process statute requires that a federal plaintiff resort to the state long-arm statute, which in turn requires minimum contacts between the state and the defendant. *See Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559 (M.D.N.C.1979). Judge Shadur ruled that the few alleged contacts that the out-of-state defendants had with Illinois, none of which related to plaintiff's cause of action, were insufficient to render defendants subject to service under the Illinois long-arm statute. Ill.Rev.Stat. ch. 110, § 17.

Plaintiff attempted to remedy the defects relied upon by the district court in dismissing the out-of-state defendants by amending the complaint to include an allegation that defendants had conspired to discriminate against women's athletics in violation of the Constitution and several federal statutes. Among these allegations were the following:

> [Defendants] have engaged in annual and other conference meetings and discussions within Illinois, including DeKalb, Illinois, and have held meetings with the Council of Presidents and the Conference of Deans for such Conference in DeKalb, Illinois, and at such meetings and conferences, issued directives and requests regarding women's athletics.

> Said defendants have, in concert with each other, agreed to and followed a pattern in disregard to deprive female athletic directors and coaches of due process of law, equal protection of the laws and of other rights guaranteed in whole or in part by various statutory and constitutional provisions heretofore enumerated; and in furtherance thereof, said defendants acted as described hereinafter described [sic] in Paragraph 22, and that the effect of their actions in conspiracy has

been felt by plaintiffs in Illinois and by other females similarly situated.

The alleged effects of the conspiracy included lower pay for women coaches, differences between the length of contracts entered into with men and women coaches, and scheduling inequities. Plaintiff alleged that defendants obtained their objectives because they "acted in concert by joining together by a conspiracy to keep such salaries of plaintiff and others low with a disparate differential."

In paragraph 22 of the amended complaint plaintiff further alleged that:

> 22. In furtherance of said conspiracy, Defendant Universities in or about August, 1979, did donate and give $1,000.00 dollars each to the Defendant Conference and Commissioner for payment to a lobby in Washington, D.C., for the purpose of urging on behalf of said Defendants that certain athletic endeavors of Defendants be exempted from application and regulations of Title IX, and that said conduct was done without consultation with any of the Plaintiffs and contrary to the philosophy and terms of Title IX and of other statutes and regulations heretofore described herein.

There does not seem to be any question that if plaintiff's complaint alleges an actionable conspiracy then the minimum contacts test has been met. The "conspiracy theory" of personal jurisdiction is based on the "time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Gemini Enterprises, Inc. v. WFMY Television Corp., supra,* 470 F.Supp. at 564; *see also National Van Lines, Inc. v. Atlas Van Lines, Inc.,* 406 F.Supp. 1087 (N.D.Ill.1975); *Socialist Workers Party v. Attorney General,* 375 F.Supp. 318, 321 (S.D.N.Y.1974), *vacated on other grounds,* 510 F.2d 253, 257 (2nd Cir.1974); *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973); *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 440–441, 56 Ill. Dec. 657, 662, 427 N.E.2d 1203, 1208 (1981). To plead successfully facts supporting application of the conspiracy theory of jurisdic-

tion a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state. *Gemini Enterprises, Inc. v. WFMY Television Corp., supra,* at 564. If plaintiff's allegations are sufficient to establish both of these elements then it was an abuse of the district court's discretion to refuse plaintiff leave to amend. See *Lone Star Motor Import, Inc. v. Citroen Cars Corp.,* 288 F.2d 69 (5th Cir.1961) (abuse of discretion to deny leave to file valid amended complaint).

■ In denying leave to amend the court analyzed paragraph 22 of the amended complaint and concluded that it failed to allege an actionable conspiracy. We agree. Plaintiff alleges in paragraph 22 that defendants gave financial support to a lobbying effort directed toward legislative change of Title IX. Plaintiff has not explained to us why defendants' support of legislative change is illegal, and we can see no possible basis for holding that this action supports a charge of illegal conspiracy. *Cf. Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (not illegal under antitrust laws to petition Government for favorable legislation).

The inadequacies of paragraph 22 do not necessarily spell defeat for plaintiff. Plaintiff need only present a prima facie showing of personal jurisdiction, *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981), and in appraising her allegations we must read the complaint liberally, in its entirety, and with every inference drawn in favor of plaintiff. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Burns v. Paddock,* 503 F.2d 18, 25 (7th Cir.1974).

■ Read liberally plaintiff's amended complaint alleges that defendants agreed to follow a systematic campaign of discrimination against women's athletics. As defendants were in competition with each other in recruiting women's coaches the success of their plan to keep women's salaries low depended on the cooperation of all MAC members. In furtherance of, and in accordance with, this conspiracy defendant NIU discriminated against female members of the athletic department. The illegal actions of NIU in Illinois are enough to provide the requisite minimum contacts between the remaining members of the conspiracy and the State of Illinois. In addition, it is a fair inference that the treatment of women's athletics was discussed by the conspirators during the alleged meeting in DeKalb, Illinois. Such action is sufficient basis for the exercise of personal jurisdiction and service of process may be effected under the Illinois long-arm statute. *See United States Dental Institute v. American Association of Orthodontists,* 396 F.Supp. 565 (N.D.Ill. 1975).

Venue in this action lies only in the judicial district "in which the claim arose." 28 U.S.C. § 1391(a). Judge Shadur held that the lack of alleged contacts between defendants and the Northern District of Illinois defeated plaintiff's attempt to establish venue. As we have stated in the context of personal jurisdiction, the original complaint's lack of allegations concerning contacts with Illinois have been cured by the amendment. These contacts are also sufficient to support plaintiff's allegation that her claim arose in Illinois. Plaintiff's amended complaint alleges that defendants met in the Northern District of Illinois, conspired to discriminate against women's athletics, and that NIU, which is located in the Northern District of Illinois, did in fact discriminate against plaintiff in furtherance of the conspiracy. Those contacts are sufficient to establish that plaintiff's claim arose in the forum district.

Because the district court abused its discretion in denying leave to amend we vacate the order dismissing the out-of-state defendants and order the district court to allow plaintiff to file her amended complaint. We intimate no view on the merits of defendants' remaining arguments concerning standing and certification of the class. Plaintiff, of course, must be prepared to prove the alleged conspiracy at the appropriate time.

## II. Award of Attorney's Fees.

Our determination that the district court erred in refusing leave to amend does not require that we find similar error in the court's finding that plaintiff's attorneys were guilty of willful abuse of the judicial process in filing and litigating the original complaint. That Deidrich and Mix should be given the opportunity to amend the complaint does not mean that they are relieved of all blame for filing a defective complaint to begin with. We will therefore turn our attention to the factual background of the award entered against Deidrich and Mix.

### A. Facts.

Attorney Deidrich filed the original complaint on January 23, 1980. Attorney Fitzgerald filed an appearance as additional counsel on February 20, and Attorney Mix filed his appearance during May. Mix prepared and filed the seven-page response to defendants' motions, which response failed to address jurisdiction or venue.

In his order of October 2, 1980, in which defendants' motions to dismiss were granted, Judge Shadur also addressed the request by several defendants for an award of attorney's fees for litigating what they thought was a frivolous lawsuit. Judge Shadur found that the complaint lacked any colorable basis for jurisdiction or venue, that plaintiff's attorney failed to respond to defendants' motions adequately, and that counsel's failure to sign the complaint after the omission had been brought to his attention amounted to a willful abuse of the judicial process and justified an award of fees against counsel under *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The court directed defendants to file motions setting forth the amount of their legal fees incurred in defending the suit.

On October 10, 1980, Deidrich and Mix filed a motion requesting a hearing on the propriety of the award of fees. The same day Judge Shadur gave a speech, at the annual meeting of the Chicago Council of Lawyers, which speech was later published, in which he cited and discussed plaintiff's case as an example of frivolous litigation.

On October 17, Judge Shadur granted Deidrich and Mix a hearing, although noting that they were not entitled to one as a matter of right under *Hayden Stone v. Brode*, 508 F.2d 895 (7th Cir.1974). The judge further informed counsel that "the burden is on you" to prove that they were not guilty of willful abuse of the judicial process, apparently analogizing the proceeding to one conducted under Rule 37, Fed.R. Civ.P., allowing an award of fees incurred in presenting a successful motion to compel discovery.

A hearing was held on October 30 and 31 during which Deidrich testified about his conduct in filing and litigating the suit. Mix did not testify, although he did appear on behalf of Deidrich. On November 5, 1980, the court affirmed the award of fees against plaintiff's attorneys, observing that counsel had a very cavalier attitude toward the duty to file an adequate complaint. In prior orders the court used the term "plaintiff's attorney," which led Mix to believe that only Deidrich was subject to the fee award. The November 5 order referred to "attorneys," prompting both Mix and Fitzgerald to request a clarification of who was liable. On the basis of an affidavit filed by Fitzgerald detailing his minimal involvement in the case Judge Shadur held that only Deidrich and Mix were included in the November 5 order. Due to unexplained delay the court did not set the amount of the award until August 6, 1982, when it ruled that defendants employing salaried counsel could not recover any fees and that Deidrich and Mix personally were to pay the attorney's fees of the other defendants. These had been placed at $56,000, but the order cut the amount to be paid to one-half.

### B. Procedural Due Process.

In assessing attorney's fees against Deidrich and Mix the district court was exercising its power to punish "counsel who willfully abuse judicial processes," which the Supreme Court recently recognized as inherent in a court's power to protect the orderly administration of justice. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100

S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). The Court cautioned, however, that "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." The principal complaint of Deidrich and Mix is that they were denied a fair notice and a meaningful hearing by the court's imposition of fees without a hearing, the court's placing the burden of proof on them rather than the moving defendants during the subsequent hearing, and Judge Shadur's public statements condemning their lawsuit as frivolous. We will examine each of these contentions in turn.

The district court relied upon the holding in *Hayden Stone v. Brode,* 508 F.2d 895 (7th Cir.1974), in assessing fees without a hearing to determine whether counsel's failings amounted to a willful abuse of the judicial process. *Hayden Stone* involved imposition of sanctions for failure to cooperate in discovery under Rule 37(a)(4), Fed.R.Civ.P., which provides that when a party unsuccessfully opposes a motion to compel discovery:

> [T]he court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in obtaining the order, including fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award unjust.

In *Hayden Stone* we held that defendant had been provided an opportunity for a hearing within the meaning of Rule 37(a)(4) when sanctions were imposed "on the basis of transcripts of the depositions involved and *memoranda from [defendant]* setting out the alleged justifications for his activities. Moreover, had [defendant] desired further hearing *after* the imposition of sanctions, he could have moved for such hearings." 508 F.2d at 897 (emphasis in original).

The district court here concluded that, as in *Hayden Stone,* the bad faith of Deidrich and Mix was apparent from the record they compiled in the course of the litigation and that no further hearing was necessary. We cannot agree. *Roadway Express* does not provide for an award of attorney's fees against losing counsel, but rather only against counsel who willfully abuse the judicial process. An award under *Roadway Express* is the exception, not the rule, and there is no basis for assuming that counsel acted in bad faith from the fact that the suit was unsuccessful. Rule 37(a)(4), on the other hand, authorizes an award whenever a party unsuccessfully opposes a discovery motion, the exception being those cases in which the court finds the opposition substantially justified.

In *Hayden Stone* defendant unsuccessfully opposed discovery, and under Rule 37(a)(4) it was incumbent on him to convince the court that his opposition was substantially justified, which he attempted but failed to do in various memoranda. In contrast, that Deidrich and Mix filed a deficient complaint and violated Rule 11 did not, without more, place upon them the onus of proving their good faith. Furthermore, that they could have responded to defendants' jurisdictional arguments but did not does not mean that they were not entitled to present arguments on the distinct issue of why they had filed a deficient complaint. In this situation the court erred in imposing fees without the prior hearing required by *Roadway Express.*

The error in assessing fees without a prior hearing was not cured by granting Deidrich and Mix a subsequent hearing during which they bore the burden of proving that the award was not justified. In placing the burden on counsel the court analogized the proceedings to those under Rule 37(a)(4), but as we have already stated, this analogy is not apt. Although truly egregious conduct by counsel may support a finding of willful abuse without any inquiry about counsel's intent, in a case such as this in which counsel's conduct is as indicative of incompetence as it is of bad faith the court was not justified in placing the burden of justification on counsel. This error was exacerbated by Judge Shadur's public speech labeling counsel as deserving judicial reprobation for their actions in litigating

this suit. Although an opinion formed from contact with a case is not the type of personal prejudice that disqualifies a judge, *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966), and although Judge Shadur probably thought that the propriety of the award had been settled at that point, the speech placed the judge in a position in which it would be difficult for him to reverse his prior ruling. This, coupled with the erroneous placement of the burden of proof, deprived Deidrich and Mix of a meaningful hearing.

Because we have determined that both Deidrich and Mix are entitled to a new hearing on the assessment of attorney's fees we need not consider Mix's separate argument that the court's ambiguity in referring to "plaintiff's attorney" deprived him of fair notice that he would be held liable for defendants' fees. On remand the case should be reassigned to a judge who has not already expressed his displeasure with plaintiff's counsel. We express no opinion as to whether Deidrich and Mix were guilty of willful abuse of the judicial process other than to note that incompetence should not be equated with bad faith. We also note that the complaint in question was an initial pleading in a period of our jurisprudence favoring notice pleading.

### III. Fees for Salaried Counsel.

■ The court held that defendants employing salaried in-house counsel were not entitled to share in the fee award. The basis for their exclusion was that fees were awarded to compensate defendants for the cost of litigating a frivolous lawsuit and that defendants relying upon in-house counsel had not incurred any additional costs as their counsel were paid a fixed salary. We think that this argument misperceives the basis for an award under *Roadway Express* and also oversimplifies the effect of a lawsuit on a party represented by in-house counsel.

In *Roadway Express* the Court recognized that fees could be awarded against counsel as a sanction intended to enforce the orderly administration of justice. As we recently observed, the primary purpose

of an award against counsel is to punish, *McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198, 202 (7th Cir.1983), and, we hope, deter counsel from undertaking frivolous lawsuits. As with fee awards entered against a party guilty of bad faith litigation, an award against counsel serves only incidentally to compensate the prevailing party for fees that should never have been incurred. *Id.* at 200; *Copeland v. Martinez,* 603 F.2d 981, 984 (D.C.Cir.1979), cert. denied, 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980). Thus, a prevailing party's decision as to how to engage counsel should have no bearing upon the court's decision to punish malfeasant counsel. The amount of fees actually incurred by the wronged party is a rational starting point for determining the size of the award, but it is no more than a guidepost. Furthermore, we have held in the context of a fee award to a state Attorney General for litigating an anti-trust action on behalf of the state that "the entitlement to reasonable attorneys' fees is that of the plaintiff, not of his attorney.... The amount plaintiff actually pays his attorney is irrelevant, since the determination of what is a 'reasonable' fee is to be made without reference to any prior agreement between the parties." *Illinois v. Sangamo Construction Co.,* 657 F.2d 855 (7th Cir.1981).

Even if we were to accept that the purpose of awarding fees to defendants was to compensate them for fees that should never have been incurred we would reverse the court's exclusion of defendants employing in-house counsel. The court applied a "but for" analysis in determining that defendants with in-house counsel had suffered no harm from this suit. In reaching this conclusion the court oversimplified the effect of this litigation on those defendants. Defendants chose to hire in-house counsel because that was the most efficient means of handling a large amount of legal work. The conclusion that plaintiff's suit did not harm these defendants rests upon the faulty assumption that in-house counsel would do nothing that would benefit defendants had they not been involved in this litigation, and that defendants therefore suffered no detriment. A more realistic

assessment of the situation would indicate that for every hour in-house counsel spent on this case defendants lost an hour of legal services that could have been spent on other matters. The value to defendants of this lost time is, of course, the amount it would require to hire additional counsel to do the neglected work. Whether defendants actually hired additional counsel or went without legal advice on some matters is irrelevant as the value of the loss is the same. An award of reasonable fees will compensate defendants for this loss. To hold otherwise would either force these defendants to abandon in-house counsel for a more inefficient system or leave them open to frivolous suits by unscrupulous counsel undeterred by the threat of a fee award.

## CONCLUSION

We remand this case to the district court to allow plaintiff to file her amended complaint and to grant Deidrich and Mix a hearing on the propriety of assessing attorney's fees against them. Should an award of fees be entered all defendants are to be compensated for the reasonable fees incurred in this litigation. In view of all of the circumstances of these appeals, each of the parties shall bear its, his, or her own costs of the appeals.