NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued April 2, 2010
Decided June 3, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-2816

| | |
|---|---|
| RONALD D. SMITH, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District |
| | of Illinois, Eastern Division |
| *v.* | |
| | No. 1:07-cv-07048 |
| JEFFERSON COUNTY BOARD OF EDUCATION, et al., | |
| | Matthew F. Kennelly, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Claiming to be the victim of a conspiracy stretching across two states and two decades, plaintiff Ronald DeWayne Smith filed in the Northern District of Illinois a petition for a writ of habeas corpus and this related civil lawsuit seeking damages and injunctive relief from two dozen defendants. Among those defendants were the appellees here, a county board of education in West Virginia and five individual West Virginia residents. The district court dismissed the claims against these West Virginia defendants for lack of personal jurisdiction, then granted their Rule 54(b) motion for entry of a partial final judgment in their favor. Smith

has appealed both rulings. We affirm.

Smith's troubles began in the early 1990s when he attempted to return from a hiatus in his job as a teacher with the Jefferson County, West Virginia, schools. Smith had left Jefferson County in 1983 to serve in the military; in his absence, a man named David Didden took his place. According to Smith's allegations, his attempt to return to his old job set off an elaborate conspiracy against him. This alleged conspiracy involved Didden himself; Didden's parents, Gregory and Margaret; Braun Hamstead, lawyer for the Diddens and for the education board; and Michael Thompson, the Jefferson County prosecutor. According to Smith, these five people conspired to file false administrative and criminal complaints alleging that Smith had sexually abused David Didden in the mid-1970s. Smith alleges that these false complaints had two purposes: first, to keep Smith out of his old job, and second, to fabricate a history of repressed sexual abuse for David so that he could claim psychological problems as an excuse for not deploying to Iraq in 1992.

Smith pled *nolo contendere* in 1995 to a criminal charge of sodomy. (He alleges here that Prosecutor Thompson coerced him to plead guilty, but the conviction has not been set aside.) Smith was sentenced to one to ten years of suspended incarceration and three years of probation. His probation was revoked in 1996 (again, Smith says, thanks to the conspirators). Smith was then incarcerated in West Virginia for about four years until his release on October 12, 2001. Just before leaving prison, he filed a state petition for habeas corpus and later obtained a deal in which the state agreed to revise his criminal record to read "crimes against nature" rather than "sodomy" and to limit to ten years the period in which Smith had to remain on West Virginia's sex offender registry.

The scene then shifted to Illinois, where Smith moved in 2003 to enroll as a student at Chicago's Moody Bible Institute. He remained there in relative peace until November 1, 2005, when a Berkeley County, West Virginia, assistant prosecutor named Josh Henline allegedly made a phone call to the Illinois Attorney General's office.[1] According to an unrebutted police report filed by another defendant, Berkeley County had sent a letter to the address that Smith had given to the West Virginia sex offender registry, and the letter had been returned as undeliverable. This return set off an investigation in Berkeley County, culminating in the issuance of a bench warrant for Smith's arrest in Berkeley County and Henline's call to Illinois.

Investigators with the Illinois Attorney General's office followed up on Henline's inquiry and arrested Smith at his school on November 2, 2005. At that point, West Virginia officials apparently dropped their investigation and ended their attempt to have Smith sent back to

---

[1]Berkeley County is located just to the west of Jefferson County in the panhandle of West Virginia, about sixty miles northwest of Washington, D.C. Neither Henline nor any Berkeley County entity is a party to this action.

West Virginia.  But despite this odd turn of events, Smith was not out of the woods:  he was later arrested and charged with failing to register as a sex offender in Illinois, a charge on which he awaits trial in an Illinois state court.  Smith has sued various Illinois defendants for alleged constitutional violations in his arrest and prosecution.  We do not address those issues here; the only issues before us in this appeal concern personal jurisdiction in Illinois over the West Virginia defendants.

In a federal question case such as this one, where there is no provision for nationwide service of process, a federal court has personal jurisdiction to the extent permitted by the law of the state in which it sits.  *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997).  Illinois law, in turn, allows personal jurisdiction over a defendant to the same extent permitted by the United States Constitution.  See 735 Ill. Comp. Stat. 5/2-209(c).  That means Smith must at least show that each defendant has "purposefully established 'minimum contacts' in the forum State" such that it is "not unreasonable to require him to submit to the burdens of litigation in that forum."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); accord, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (requiring "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State").

Our abbreviated recitation of Smith's allegations makes apparent that the only wrongdoing he ascribes to the six West Virginia defendants took place entirely in West Virginia.  Smith argues nonetheless that Illinois can exercise jurisdiction because the conduct he alleges in West Virginia had an "effect" in Illinois.  This argument mistakes the nature of personal jurisdiction, which is concerned with the actions of individual defendants and not with the effects of conduct generally.  For Illinois to exercise personal jurisdiction over any one of these non-resident defendants, Smith must allege that the particular person reached out to Illinois in a way that makes him reasonably liable to be sued there.  *Burger King*, 471 U.S. at 475-76.  This Smith has not done.  The only West Virginian who Smith alleges had any contact at all with Illinois is the Berkeley County deputy prosecutor, Josh Henline, and he is not a defendant here.[2]

Jurisdiction is nevertheless available, Smith argues, by Illinois's recognition of the "conspiracy theory of personal jurisdiction."  The idea behind this theory is that personal jurisdiction is proper over an out-of-state defendant in a forum where one of his co-conspirators has acted as the defendant's agent in furtherance of the conspiracy.  See, *e.g.*, *Davis v. A&J Electronics*, 792 F.2d 74, 75-76 (7th Cir. 1986), citing *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1392-93 (7th Cir. 1983).  The first problem with this argument is that the theory may not be valid in Illinois.  See *Ploense v. Electrolux Home Products, Inc.*, 882 N.E.2d 653, 666 (Ill. App. Ct. 2007) (stating that an Illinois Supreme Court case "effectively scuttl[ed]"

---

[2]We take the facts as alleged in Smith's second amended complaint, not in his brief before this court, where he contends without support from the record that "the telephone call was made by [the] State of West Virginia and Thompson."  Appellant's Br. 21.

the theory); *Knaus v. Guidry*, 906 N.E.2d 644, 659-61 (Ill. App. Ct. 2009) (noting the "articulated hesitancy of our supreme court . . . to adopt the conspiracy theory of jurisdiction in Illinois"). Even if it were viable, the theory would not permit a plaintiff to draw a defendant into court in Illinois simply by alleging a conspiracy that includes some Illinois defendants and some out-of-state defendants, while making no effort to connect the two. That stretch would take well beyond the bounds of Illinois law and the bounds of federal due process a theory that is already marginal at best. See *Ploense*, 882 N.E.2d at 667-68 (questioning whether conspiracy theory of personal jurisdiction meets federal minimum contacts requirement); *Knaus*, 906 N.E.2d at 662-63 (same).

The only connection that Smith's allegations make between West Virginia and Illinois is the phone call made by Henline. And the only connection his allegations make between Henline and the West Virginia defendants is that all of them live among the rolling hills of eastern West Virginia. That attenuated link is not enough to establish that these defendants purposefully availed themselves of the benefit of Illinois's laws or should have expected to be called into Illinois's courts.

Once the district court had properly dismissed the West Virginia defendants for lack of personal jurisdiction, it was entirely proper to grant their Rule 54(b) motion for partial final judgment as well. Requisite to any Rule 54(b) judgment is a final resolution of a separate claim or of all claims against a particular party or parties. See, *e.g.*, *United States v. Ettrick Wood Products, Inc.*, 916 F.2d 1211, 1217 (7th Cir. 1990). The district court's dismissal of the claims against the West Virginia defendants pursuant to Rule 12(b)(2) constitutes such a final resolution.

Once that preliminary requirement is satisfied, a district court may grant final judgment to fewer than all parties only if it "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The district court made its express determination with respect to these defendants both in court on June 15, 2009 and in a written order the next day. The court explained that it was granting the motion because "the West Virginia defendants are completely separable from the remainder of the case" once they were dismissed for lack of personal jurisdiction. Smith does not say why we should find this ruling to be an abuse of discretion, see *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008) (applying abuse of discretion standard to Rule 54(b) determination), nor does he offer any other reason to delay releasing these defendants from the snare of this litigation. In fact, the district court's ruling was in perfect harmony with its finding that Illinois lacks personal jurisdiction over these defendants, a finding premised on the injustice of dragging them to Illinois to defend a West Virginia lawsuit in the first place. This situation – one group of defendants who are entitled to dismissal on grounds entirely separate from the issues relating to the remaining defendants – is the paradigm of an easy case for entry of a partial final judgment under Rule 54(b).

The district court's partial final judgment in favor of defendants David Didden, Gregory Didden, Margaret Didden, Braun Hamstead, Michael Thompson, and the Jefferson County Board of Education is AFFIRMED.